## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ZACHARY BROMMER,<br><br>*Plaintiff*<br><br>v.<br><br>JEFFERSON PERFORMING ARTS SOCIETY,<br><br>*Defendant* | CIVIL ACTION NO. 21-cv-0726<br><br>COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

**NOW INTO COURT,** through undersigned counsel, comes Plaintiff, Zachary Brommer, on his own behalf and on behalf of those similarly situated (at times hereinafter referred to collectively as "Plaintiffs"), to allege:

### I.   INTRODUCTION

1. Jefferson Performing Arts Society ("JPAS") is a non-profit corporation whose "mission is to . . . provid[e] a diverse range of quality programs that entertain, educate and enrich the cultural and economic vitality of Jefferson Parish, Greater New Orleans and the Gulf South."[1] Unfortunately, JPAS has pursued this mission of artistic enrichment at the expense of the laborers who produce its theatrical production by paying low wages, demanding long hours, and then refusing to pay overtime compensation owed to those employees under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. (hereinafter "FLSA"). Further, after Zachary Brommer (Technical

---

[1] Jefferson Performing Arts Society, Our Mission, https://www.jpas.org/our-mission/, last visited April 7, 2021.

Director by title) resigned out of fear of contracting COVID-19 due to the organization's failure to create policies to protect employee, Defendant then failed to pay wages owed to Mr. Brommer under the Louisiana Wage Payment Act, La. R.S. 23:621, *et seq*. ("LWPA") despite his requests for payment.

2.      Mr. Brommer brings this action on behalf of himself and other similarly situated current and former employees performing manual labor as employees of Defendant and who elect to opt-in to this action pursuant to the FLSA's collective action provision, 29 U.S.C. § 216(b).

## I.      JURISDICTION AND VENUE

3.      This action alleges the violation of rights under the FLSA. Thus, the predominant action herein gives rise to the jurisdiction in this Court pursuant to 28 U.S.C. §1331. Furthermore, there exist additional state causes of action, that arise out of the same transaction or occurrence as the underlying federal cause of action, and this Court has ancillary jurisdiction over these counts pursuant to 28 U.S.C. §1367.

4.      The Court has personal jurisdiction over Defendant since they are domiciled in the State of Louisiana. Venue lies in this Court over these claims pursuant to 28 U.S.C. § 1391(b) and (c) as the events or omissions giving rise to these claims occurred in the Eastern District of Louisiana.

## II.      PARTIES

### A.      Plaintiffs

5.      Named Plaintiff, Zachary Brommer, is a citizen of the United States of America who resides in the Eastern District of Louisiana. Mr. Brommer was formerly employed by JPAS and performed his job duties for Defendant entirely in the Eastern District Louisiana.

2

6. Named Plaintiff, Mr. Brommer, was one of approximately 10 employees performing manual labor employed by Defendant. All employees worked in the Eastern District of Louisiana. Like Mr. Brommer, these employees performed manual labor for JPAS.

7. Mr. Brommer seeks to assert his claims individually, and on behalf of all of those similarly situated, who are currently employed by Defendant and/or who have been employed by Defendant any time in the last three years to the present, pursuant to 29 U.S.C. § 216, as set forth in detail below.

8. Mr. Brommer's written consent to join this FLSA collective action is attached as Exhibit A to this Complaint.

### B. Defendant

9. Defendant JPAS is a Louisiana Non-Profit Corporation domiciled in Metairie, Louisiana, and headquartered at 1118 Clearview Parkway, Metairie, LA 70001, in the Eastern District of Louisiana. JPAS serves Louisiana, Mississippi and communities throughout the gulf South. It produces theatrical productions with performers travelling from around the country, and the world, and collaborates with major cultural institutions from around the world. JPAS earns more than $1,000,000.00 per year from event revenue. It earns additional money through the sales of goods and items obtained through interstate commerce.

### III. FACTUAL BACKGROUND

**A. JPAS Fails to Pay Employees for their Wages, and Yet Claims to be a Beacon of Financial Support for Workers and Communities Involved in the Arts.**

10. The Jefferson Performing Arts Society states that its mission includes playing a "role of the arts as an economic stimulus in the community" and credits itself with being an "engine

of economic activity for the region annually impacting the local economy at a rate of close to $5 million."[2]

11. In reality, Defendant pays workers barely survivable wages for their work 40-hour week, and then, refuses to pay them any wages for overtime.

**B. Even the JPAS' Handbook Admitted Overtime is Owed to Non-Exempt Employees, and Yet Stated that JPAS Would Refuse to Pay Overtime as Legally Required.**

12. Although the JPAS' employee handbook acknowledged that non-exempt employees must be paid overtime at a "rate of one a half times their regular salary" under the FLSA, JPAS informed employees that if they worked overtime, in order to "qualify for said compensation, the overtime work must be authorized in advance by the immediate supervisor, in consultation with the Executive Director."

13. Of course, the FLSA allows no such exception: "Work not requested but suffered or permitted is work time." 29 C.F.R. § 785.11.

14. JPAS was at all times aware of the work being performed by Mr. Brommer, and in most instances, specifically requested the work be performed.

**C. Mr. Brommer's Job Duties Involved Blue Collar Manual Labor.**

15. Mr. Brommer was a blue-collar manual labor who was not exempt from overtime.

16. His manual labor tasks required physical skill and energy. His major job duties included carpentry, welding, steel construction, rigging, building/constructing flats, multi-level sets, building/constructing staircases, moving large pieces of furniture/wood to and from multiple locations, operating furniture lifts, and electronic (audio and lighting) installation. To accomplish these tasks, he used hand saws, chop saws, table saws, jig saws, screwdrivers, screws, hammers,

---

[2] Jefferson Performing Arts Society, Our Mission, https://www.jpas.org/our-mission/, last visited April 7, 2021.

and nails among other shop tools. He was also responsible for unloading lumber, steel, and paint for use in set production. He maintained cables, lighting fixtures, maintained lightboards and light bulbs, repaired microphone leads and maintained all mechanical equipment used in the theater for productions.

17. Mr. Brommer also was responsible for performed theatrical electrical wiring as well as hanging, focusing, circuiting and troubleshooting all lighting, including conducting all necessary repairs and replacements of lights or lighting boards

18. Further, he operated JPAS's Ford F-150 and 26' box truck.

19. He assisted with operating the hydraulic pit. He assisted with the orchestra pit set up, carrying equipment and supplies.

20. He also was responsible for organizing storing large scenic elements in the JPAS warehouse.

21. In addition, Mr. Brommer performed general facility maintenance.

**D.    Mr. Brommer's Work Involved Interstate Commerce.**

22. To perform these duties, Mr. Brommer used credit cards to purchase necessary equipment and items online, through interstate commerce, and then handled these items in his duties for JPAS.

23. Once the items he created were used in production, actors and patrons travelled from other states and other countries to perform for JPAS.

**E.    Mr. Brommer worked over 40 hours a week for over two years, and never received overtime pay.**

24. Mr. Brommer was titled the Assistant Technical Director of JPAS from June 15, 2018, to November 26, 2020. He made just $26,000 a year and also paid JPAS $500 a month for housing until September 14, 2018 so that he really received just $20,000 a year, when his salary

was increased to $27,000 and he continued to pay JPAS $500 a month for housing so that he really received just $21,000 a year. On February 15, 2019, Mr. Brommer received a raise to $29,000 a year and he continued to pay JPAS $500 a month for housing, so that he really received just $23,000 a year.  On June 29, 2019,  he received a raise to $30,000 a year and was allowed to remain in JPAS housing with no rent. He left JPAS housing on October 9, 2019. He continued to receive $30,000 a year until November 26, 2020.

25. Mr. Brommer was then titled the Technical Director from November 27, 2020, until his resignation on December 3, 2020, and was paid $45,000 a year.

26. Further, Mr. Brommer had no consistent salary basis for this work and received a fluctuating salary. From 2018 to 2020, as JPAS' business needs dictated, Mr. Brommer received additional compensation in certain pay periods as documented in other employment agreements between the parties.

27. In all relevant periods, Mr. Brommer typically began work around 8:00 am often stayed until 7:00 pm. As a result, he often worked 45 to 60 hours a week.  In the weeks leading up to a production by Defendant (of which there approximately 19 a year), Mr. Brommer worked even longer hours, and regularly worked until 10:00pm or midnight, and over weekends. As a result, at times, he worked 75 to 80 hours a week. From 2018 until his resignation, Mr. Brommer worked over 1,000 hours of overtime.

**F.     JPAS did not Pay any Employees' overtime.**

28. Despite working many hundreds of hours of overtime while employed at JPAS, Mr. Brommer was never paid overtime compensation.

29. Mr. Brommer was one of many JPAS employees primarily performing manual labor but not receiving overtime. Mr. Brommer supervised one to two other employees, depending

on the time, who also performed manual labor alongside him. None of these individuals were paid overtime, and all regularly worked over 40 hours per week.

30. In addition, individuals assigned the titles of Master Carpenter, Carpenter, Scenic Artist, and Assistant Technical Director also primarily performed manual labor. From 2018 to the present, about ten different individuals have worked in these roles. None of these individuals were paid overtime, and all regularly worked over 40 hours per week.

### G. JPAS Refused to Pay Mr. Brommer his Final Wages.

31. Concerned that JPAS refused to ensure proper testing, quarantine and other safety protocols for COVID-19, Mr. Brommer resigned on December 3, 2020.

32. Mr. Brommer worked on November 27, 2020, and November 30, 2020, for a total of 16 hours, and earned $250.08.

33. JPAS failed to pay him within 15 days of his termination.

34. By letter dated March 3, 2021, Mr. Brommer requested payment of all wages under the LWPA. After that letter, JPAS still refused to tender the outstanding wages, and refuses still.

### H. JPAS is an Employer Covered under the FLSA.

35. At all times relevant to this Complaint, Defendant has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

36. At all times relevant to this Complaint, Defendant has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s) of the FLSA, 29 U.S.C. § 203, in that Defendant operates an enterprise that has employees engaged in commerce or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and has annual gross revenues that exceed $500,000.00. 29 U.S.C. § 203(s)(1)(A).

37. At all times relevant, Plaintiffs were individual employees engaged in performing activities within the meaning of 29 U.S.C. § 203(r) as required by 29 U.S.C. §§ 206, 207.

38. Plaintiff brings this action on behalf of the following class of similarly situated individuals:

> All current and former employees who performed manual labor for Defendant, Jefferson Performing Arts Society (JPAS), whether currently employed by Defendant or employed by Defendant within the last three years, who elect to opt-in to this collective action pursuant to the FLSA, 29 U.S.C. § 216(b).

39. The members of the class are so numerous that joinder of all other members of the class is impracticable. While the exact number of the other members of the class is unknown to Plaintiff at this time and can only be ascertained through applicable discovery, Plaintiff believes there are at least 10 individuals in the class.

40. The claims of Plaintiff are typical of the claims of the class. Plaintiff and the other members of the class work or have worked for Defendant and were subject to the same operational, compensation, classification and timekeeping plans, policies, and practices, including the failure to pay Plaintiff and other misclassified employees overtime compensation under the FLSA for all hours worked in excess of forty (40) hours per week during the relevant statutory limitations' period.

41. Collective action mechanism is superior to the other available methods for a fair and efficient adjudication of the FLSA claims. The expenses, costs, and burden of litigation suffered by individual other members of the class in a collective action are relatively small in comparison to the expenses, costs, and burden of litigation of individual actions, making it virtually impossible for other members of the class to individually seek redress for the wrongs done to them.

42. Plaintiff and other members of the class have suffered and will continue to suffer irreparable damage from the unlawful policies, practices, and procedures implemented and administered by Defendant.

### IV.  CAUSES OF ACTION

#### COUNT 1
#### VIOLATIONS OF THE FLSA
#### AS TO ALL PLAINTIFFS

43. Plaintiff incorporates by reference and re-alleges each and every allegation contained above as though fully set forth herein.

44. The FLSA requires employers to compensate employees "at a rate not less than one and one-half times the regular rate at which he is employed" for any hours worked in excess of 40 hours per workweek. 29 U.S.C. § 207(a)(1).

45. Plaintiffs do not fall within any exemption from the FLSA and was required to be paid according to the dictates of that section.

46. At all relevant times, Defendant and their representatives directed the means and manner by which Plaintiffs were compensated.

47. During the relevant time period, Defendant violated the FLSA's overtime pay requirements by employing Plaintiffs to engage in commerce within the meaning of the FLSA for workweeks longer than 40 hours without compensating him for overtime at a rate no less than one and one-half times his regular rate in violation of 29 U.S.C. §§ 206 and 207(a)(1) and 29 C.F.R. § 778.315.

48. Defendant knew Plaintiffs performed work that required that they be paid overtime compensation under the FLSA. Nonetheless, Defendant operated under the aforementioned centralized and uniform plans, policies, and practices with the intent to deprive Plaintiffs of such overtime compensation in violation of the FLSA

49. No exemption excused Defendant from paying Plaintiffs' overtime for the overtime hours worked.

50. Defendant's practice of failing to correctly pay Plaintiffs for overtime hours is a violation of the FLSA.

51. The illegal pattern or practice on the part of Defendant with respect to Plaintiffs' overtime compensation was known by Defendant to be in violation of the FLSA.

52. Defendant knew of its requirements to abide by the FLSA and did not make a good faith effort to comply with the FLSA.

53. Defendant's refusal and/or failure to properly pay for overtime was done so knowingly, willfully, or in reckless disregard in carrying out its illegal pattern or practice.

54. The decision by Defendant not to properly calculate and compensate Plaintiffs' wages was neither reasonable, nor in good faith.

55. Further, Section 211 of the FLSA further requires employers to keep accurate records of data related to their employees' "wages, hours, and other conditions and practice of employment." 29 U.S.C. § 211(a), (c).

56. Defendant failed and/or refused to document the hours Plaintiffs worked each workweek, Plaintiffs' total overtime earnings for the work week, and all additions to or deductions from Plaintiffs' wages.

57. Defendant violated the FLSA by failing to keep records regarding Plaintiffs' employment and compensation in accordance with the requirements of 29 U.S.C. §211.

**COUNT 2**
**VIOLATIONS OF THE LWPA – UNPAID WAGES**
**LA. R.S. 23:631 ET. SEQ.**
**AS TO PLAINTIFF BROMMER**

58. Plaintiff incorporates by reference and re-alleges each and every allegation contained above as though fully set forth herein.

59. The LWPA requires employers to inform employees at the time of hire "what wages they will be paid, the method in which they will be paid and the frequency of payment along with any subsequent changes thereto." La. R.S. 23:633(A).

60. Through the various schemes outlined herein, Defendant employed policies, plans, and/or practices resulting in Defendant failing and/or refusing to tender owed wages to Plaintiff at the rate and frequency agreed upon as required by law and public policy.

61. Defendant violated the LWPA by failing and/or refusing to pay earned wages to Plaintiff at the frequency and rates agreed upon in its employment contract.

62. Further, under the LWPA, Defendant were required to remit all of the overdue/final wages owed Plaintiff, and those similarly situated, within fifteen (15) days of termination of their employment. La. R.S. 23:631.

63. Plaintiff submitted numerous amicable demands for Defendant to remit all earned overdue wages including owed bonuses and other compensation, under La. R.S. 23:632.

64. Defendant's refusal to tender all earned wages to Plaintiff after the termination of his employment is contrary to law and public policy.

65. Failure to pay said wages to Plaintiff results in mandatory penalty wages and attorneys' fees pursuant to La. R.S. 23:632 *et seq*.

### V. COLLECTIVE ACTION ALLEGATIONS - 29 U.S.C. § 216(B)

66. Plaintiff incorporates by reference and re-allege each and every allegation contained above as though fully set forth herein.

67. A large but unknown number of employees performing manual labor and employed by Defendant have been damaged by patterns, practices and/or policies which constituted a willful violation of the FLSA in the Eastern District of Louisiana.

68. Named Plaintiff has been paid in the same or similar manner as the class members and all were not properly compensated as required by the FLSA. Neither Plaintiff nor class members were exempt, were at all times covered by the FLSA, and were all improperly paid by Defendant.

69. Pursuant to 29 U.S.C. § 216(b), Plaintiff seeks to prosecute his FLSA claims as a collective action on behalf of the members of the class which includes all employees performing manual labor employed by Defendant at any time from three years prior to the filing of this action through entry of judgment in this matter who worked overtime hours for which they were not fully compensated as a result of Defendant's policy not paying overtime or tracking hours worked.

70. The affected employees falling within the class include all of Defendant's employees performing manual labor during the indicated period, because all such employees were subject to Defendant's uniform refusal to pay overtime.

71. Plaintiffs seek 216(b) certification of Defendant's employees who performed manual labor worked overtime for Defendant at any point from three years prior to the filing of suit through entry of judgment.

72. Defendant's failure to pay properly calculated wages, as required by the FLSA, results from a generally applicable systematic policy and/or practice which is not dependent on the personal circumstances of the class members. Thus, Plaintiff's experiences are typical of the experiences of the class members.

73. This action is properly maintained as a FLSA collective action because Plaintiff is similarly situated to the class members with respect to Defendant's timekeeping, payroll and operational plans, policies, and practices. Plaintiffs and class members were subjected to Defendant's aforementioned centralized and uniform plans, policies, and practices of improperly calculating and paying overtime.

74. The FLSA class is so numerous that joinder of all members is impracticable. Although the data required to calculate the precise size of the class is within the sole control of Defendant, Plaintiffs believe the putative class consists of at least 10 current and former employees of Defendant.

75. Plaintiff will fairly and adequately protect the interests of the class members, and have retained counsel experienced and competent in the field of wage and hour law and collective action litigation. Plaintiff has no interest that is contrary to or in conflict with the interests of any of the class members.

76. The collective action mechanism is superior to other available methods for a fair and efficient adjudication of the FLSA claims. Defendant have acted or refused to act on grounds generally applicable to FLSA class members. The prosecution of separate actions could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant, place a substantial and unnecessary burden on the courts and/or substantially impair the ability of FLSA class members to protect their interests.

77. Plaintiffs know of no difficulty that would be encountered in the management of this litigation that would preclude its maintenance as a collective action.

78. The FLSA 216(b) collective action class may be defined as:

All current and former employees who performed manual labor for Defendant, Jefferson Performing Arts Society (JPAS), whether currently employed by

Defendant or employed by Defendant within the last three years, who elect to opt-in to this collective action pursuant to the FLSA, 29 U.S.C. § 216(b).

79. Based on nature of Defendant' violations, and the facts and circumstances surrounding their communications to employees, Putative Class Members should be notified of this action, given the chance to join pursuant to 29 U.S.C. § 216(b), and be allowed to equitably toll the limitations period.

## VI.   RELIEF SOUGHT

80. WHEREFORE, Plaintiff, and those similarly situated, pray for a judgment against Defendant as follows:

   a. For certification of and notice to the FLSA Collective Action Classes as further defined and determined by motions practice and to properly inform them of their rights;

   b. For an Order tolling the statute of limitations on Plaintiffs' FLSA claims (and those who have joined in the suit) to the date of filing of this Suit;

   c. The class members are entitled to an amount equal to one and one-half times the rate of pay for all overtime worked all of their unpaid overtime compensation as well as liquidated damages plus liquidated damages, attorney's fees, costs, and prejudgment and post-judgment interest. Plaintiff is entitled to recover an amount equal to one and one-half times the rate of pay for all overtime worked as well as liquidated damages plus liquidated damages, attorney's fees, and costs.

   d. Under state law, Plaintiff is entitled to recover unpaid wages, 90 days of penalty wages, treble damages;

   e. Costs, attorney fees, and prejudgment and post-judgment interest; and

   f. For an Order granting such other and further relief as may be necessary and appropriate.

## VII.   DEMAND FOR TRIAL BY JURY

81. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all questions of fact raised by this Complaint.

Respectfully submitted,

/s/ Casey Rose Denson
**Casey Rose Denson (La. Bar #33363)**
**Justine G. Daniel (La. Bar #36856)**
**CASEY DENSON LAW, LLC**
4601 Dryades Street
New Orleans, LA 70115
Phone: (504) 224-0110
Fax: (504) 534-3380
cdenson@caseydensonlaw.com
jdaniel@caseydensonlaw.com


/s/ Kenneth C. Bordes
**KENNETH C. BORDES (BAR #35668)**
**KENNETH C. BORDES,**
**ATTORNEY AT LAW, LLC**
4224 CANAL ST.
NEW ORLEANS, LA 70119
P: 504-588-2700
F: 504-708-1717
E: KCB@KENNETHBORDES.COM

***Attorneys for Plaintiff Zachary Brommer***